Jason S. Hartley (State Bar No. 192514)
*hartley@stuevesiegel.com*
STUEVE SIEGEL HANSON, LLP
550 West C Street, Suite 610
San Diego, CA 92101
Telephone:      (619) 400-5822
Facsimile:      (619) 400-5832

Vincent J. Esades
*vesades@heinsmills.com*
David Woodward (State Bar No. 68073)
*dwoodward@heinsmills.com*
Renae D. Steiner
*rsteiner@heinsmills.com*
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN  55403
Telephone:      (612) 338-4605
Facsimile:      (612) 338-4692

*Attorneys for Individual and Representative Plaintiff*
*David Waring*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WARING, individually, and on behalf of all others similarly situated, | Case No.   **'11 CV0569 DMS BLM** |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| CONSUMERINFO.COM, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff, by his undersigned counsel, on behalf of himself and a Class of those similarly situated, brings this action against Defendant and alleges based upon personal knowledge of the allegations pertaining to Plaintiff, and upon information, belief, and the investigation of counsel as to all other allegations, the following.

## I.      NATURE OF THE CASE

1.      Defendant takes money from consumers through deception – it does not sell what it advertises.  Through false, misleading and deceptive advertisements, Defendant has

1   defrauded Plaintiff and the Class in violation of California consumer laws by (1) misrepresenting

2   that Defendant offers, sells and provides a credit score used by lenders in determining a

3   consumer's creditworthiness; (2) failing to sell and provide such credit scores to Plaintiff and the

4   Class as advertised; and (3) failing to clearly and conspicuously disclose material facts, including

5   that Defendant's advertised "credit score " is based on a proprietary, in-house method of

6   calculation (Experian's Plus Score®) that, in Defendant's own words, buried in the fine print, "is

7   not currently sold to lenders" and is not used by lenders in determining the creditworthiness of

8   consumers purchasing Defendant's "credit score." Plaintiff asserts claims for violations by

9   Defendant of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770(a)(5), (7)

10   and (9) and 1782(d) (Plaintiff now seeks injunctive relief and restitution); California's False

11   Advertising Law, Bus. & Prof. Code § 17500 *et seq.*; and California's Unfair Competition Law,

12   Cal. Bus. & Prof. Code § 17200 *et seq.*

13       2.    Plaintiff brings this action on behalf of himself and a nationwide Class of

14   similarly situated consumers who purchased Defendant's credit scores through Defendant's

15   Internet sites, www.freecreditreport.com, www.freecreditscore.com, or www.consumerinfo.com,

16   during the period from March 22, 2007, to the present.

17       3.    Plaintiff, for himself and for the Class, seeks injunctive and other equitable

18   relief, restitution, and costs of suit and reasonable attorneys' fees.

19   **II.   JURISDICTION AND VENUE**

20       4.    This Court has personal jurisdiction over the Defendant. The Court has

21   jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), in that this is a

22   class action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of

23   interest and costs, and in which some members of the proposed class are citizens of a state

24   different from Defendant. Defendant has transacted business and its affairs in California.

25   Defendant's headquarters and principal place of business is located in California.  Defendant has

26   committed the acts complained of in and from California.

27       5.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and

28   (c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

1   Defendant has transacted business in this district and has committed the acts complained of in this

2   district.

3   **III.    PARTIES**

4       **A.    Plaintiff**

5           6.      Plaintiff  David Waring resides in San Diego, California. During the Class

6   Period, Plaintiff purchased a credit score from Defendant after viewing Defendant's Internet site,

7   www.freecreditreport.com.  Defendant thereafter enrolled Plaintiff in Defendant's credit

8   monitoring service and charged Plaintiff a recurring monthly fee of $14.95.   Plaintiff saw and

9   relied upon Defendant's misrepresentations, made in Defendant's Internet site

10  www.freecreditreport.com that Defendant was offering to sell and provide a credit score used by

11  lenders to determine consumers' creditworthiness.  Defendant failed to disclose clearly and

12  conspicuously to Plaintiff the material facts that Defendant's credit score, contrary to Defendant's

13  representations made in its advertisement,  is based on an in-house, proprietary credit scoring

14  model that is not sold to lenders and is not used by lenders in determining consumers'

15  creditworthiness.  Plaintiff purchased Defendant's credit score as a result of Defendant's

16  misrepresentations and omissions of material facts.  Plaintiff would not have purchased

17  Defendant's credit score if Defendant had not engaged in such material misrepresentations and

18  omissions but had truthfully advertised the "credit score" Defendant actually provides.  Plaintiff

19  has suffered injury and loss of money as a result of Defendant's unlawful conduct.

20      **B.    Defendant**

21          7.      Defendant Consumerinfo.com, Inc., is a California corporation with its

22  headquarters and principal place of business located at 475 Anton Blvd., Costa Mesa, California

23  92626.  Through its Internet sites www.freecreditreport.com, www.freecreditscore.com, and

24  www.consumerinfo.com, Defendant advertises, offers for sale and sells to consumers in

25  California and throughout the United States what Defendant misrepresents as a credit score.

26  Defendant represents on its Internet sites that it has delivered more than 20 million credit reports

27  through its Internet sites.  Defendant offers and sells Defendant's credit scores in conjunction

28  with its credit reports and credit report monitoring services.  Defendant was incorporated under

the laws of California on May 24, 1993 and has operated as a California corporation at least since 1995. In 2002, Defendant was acquired by its parent corporation, Experian plc, the corporate headquarters of which are located in Dublin, Ireland, with an operational headquarters located at 475 Anton Blvd., Costa Mesa, California 92626.

## IV. FACTUAL ALLEGATIONS

### BACKGROUND

8.     A credit score is a number derived from a statistical tool or modeling system used by lenders to determine a consumer's financial creditworthiness, including the likelihood or risk that a consumer will default on or fail to repay a loan or other credit obligation. Credit scores are extremely important to consumers and lenders. Credit scores are used by lenders, including banks, credit card companies, residential mortgage lenders, automobile dealerships and other lenders to assess the risk associated with loans, to determine whether or not to make a loan, to determine the interest rates that will be charged on the loan and to establish credit limits.

9.     A credit score is calculated by applying a scoring algorithm to a consumer's aggregated credit data reported to and maintained by the nation's three largest credit bureaus, Experian Information Solutions, Inc. ("Experian"), Equifax Inc. ("Equifax") and TransUnion, LLC ("TransUnion"). These national credit bureaus obtain aggregated credit data on consumers from various sources, including lenders and other credit issuers. Such aggregated credit data is essential for the calculation of a credit score and reflects years of information on hundreds of millions of consumers.

10.     The credit scores used by the vast majority—well over 90%-- of lenders are the credit scores developed by Fair Isaac Corporation ("Fair Isaac"), a Delaware corporation with its principal place of business in Minneapolis, Minnesota. Fair Isaac developed the first credit scoring model in 1958. Fair Isaac credit scores, known as FICO scores, are by far the dominant credit scores used by the overwhelming majority of lenders in assessing consumers' creditworthiness.

11.     Historically, the three largest credit bureaus in the United States, Experian, Equifax and TransUnion, have distributed FICO credit scores to lenders.  The three largest credit bureaus are licensed by Fair Isaac to provide Fair Isaac's credit scores to lenders.  Pursuant to those license agreements, the credit bureaus apply Fair Isaac's algorithms to consumers' aggregated credit data to calculate FICO scores, which the credit bureaus distribute to lenders. FICO credit scores are also sold directly to consumers by Fair Isaac through its division, myFICO®.  Fair Isaac, through the Internet site, www.myFICO.com, began selling its FICO scores directly to consumers in March 2001.

12.     Effective February 14, 2009, Experian ended its relationship with myFICO. Defendant does not sell, distribute or provide FICO credit scores to consumers.  Since February 14, 2009, Experian (one of the three largest credit reporting agencies, an Experian plc company and a sister company to Defendant) has not sold, distributed or provided FICO scores based on Experian's aggregate credit data to consumers.  Since February 14, 2009, Experian has continued to sell and provide to lenders consumers' FICO scores based on Experian's aggregate credit data. As Defendant knows, the fact that Experian has always sold FICO scores to lenders, both before and after February 14, 2009, and continues to sell FICO scores to lenders, as do the other largest credit reporting agencies in the United States, Equifax and TransUnion, underscores and further evidences that FICO scores have been and remain by far the dominant credit scores used by lenders in determining consumers' creditworthiness.

13.     The "credit scores" advertised by Defendant and provided to consumers are not credit scores sold to or used by lenders in determining consumers' creditworthiness and are not FICO scores.  Unlike FICO scores, the credit score advertised on Defendant's websites, www.freecreditreport.com, www.freecreditscore.com, and www.consumerinfo.com, is based on Experian's in-house credit scoring model (Experian's Plus Score®), which, as Defendant itself admits, "is not currently sold to lenders" and is therefore not used by lenders in determining a consumer's creditworthiness.

## DEFENDANT'S MATERIAL MISREPRESENTATIONS AND OMISSIONS

14.     Through its advertising, including the Internet sites www.freecreditreport.com, www.freecreditscore.com and www.consumerinfo.com, Defendant represents that it is offering, selling and will provide to consumers credit scores that are used by lenders in making determinations of the consumer's creditworthiness.  Defendant's advertising and representations are false, deceptive and misleading.  In fact, Defendant does not sell or provide to consumers via Defendant's Internet sites a credit score actually used by lenders in determining a consumer's creditworthiness.  In its advertising at the forgoing Internet sites, Defendant omits and fails to disclose the material facts that Defendant does not sell or provide a credit score used by lenders to determine a consumer's creditworthiness and that Defendant's "credit scores" are not used by lenders in determining a consumer's creditworthiness.

15.     An example of Defendant's Internet advertisements, disseminated and available to consumers at Defendant's Internet site, www.freecreditreport.com, is attached as Exhibit 1, the contents which are incorporated herein by reference.  In this advertisement, Defendant makes the following representations:

"Mistakes on your Credit Report can cost you thousands!  See if yours is accurate."

"Get Your <u>Instant</u> Credit Report & Score for $1."

"•See Your Credit Report & Score instantly"

"•Find out which factors affect your Score."

"•Be alerted when your Score goes up or down."

**"Take the first step toward staying on top of your credit!"**

"Getting your Credit Report & Credit Score is the first step in knowing your credit."

**"Try it RISK-FREE for 7 days!"**

"•Bi-monthly monitoring of your Experian Credit Score with alert notifications when it goes up or down or moves you into a different risk level."

"•A Monthly Statement with your Credit Score. Alerts digest, and a summary of the key financial information that lenders use to rate you."

"Take the guesswork out of what's happening with your credit. Enroll in your RISK-FREE trial of Triple Advantage and get your Credit Report & Score for $1!"

**"More on Credit Score."**

"DID YOU KNOW that three little numbers (your credit score) could end up saving you hundreds, or even thousands, of dollars? Lenders use credit scores to help them determine the "credit worthiness" of consumers applying for credit cards, lines of credit, or loans. The applicant's credit score will probably be used for figuring out whether he or she qualifies for credit, and if so, what terms and interest rates he or she will receive."

"Credit scores are calculated based on data in your credit reports…. That's why it's so important to stay on top of your credit reports for changes that could affect your credit scores."

"Triple Advantage Credit Monitoring lets you do both … plus you can pull your credit report and check your credit score every day as a paid member!"

**"Try Triple Advantage RISK-FREE for 7 Days and Get Your Credit Report & Credit Score for $1!"**

16.     Another example of Defendant's advertising, available and disseminated at Defendant's Internet site, www.freecreditreport.com, is attached as Exhibit 2, the contents of which are incorporated herein by reference. In this advertisement, Defendant, immediately before the prominently displayed number 598, designed to indicate a credit score, states, "Mistakes on your Report can cost you money and affect your Credit Score!" In this advertisement, Defendant makes the following representations:

"Get Your Instant Credit Report & Score for $1."

"•See Your Credit Report & Score instantly"

"•Find out which factors affect your Score."

"•Be alerted when your Score goes up or down."

**"Take the first step toward staying on top of your credit!"**

"Getting your Credit Report & Credit Score is the first step in knowing your credit."

**"Try it RISK-FREE for 7 days!"**

"•Bi-monthly monitoring of your Experian Credit Score with alert notifications when it goes up or down or moves you into a different risk level."

"•A Monthly Statement with your Credit Score. Alerts digest, and a summary of the key financial information that lenders use to rate you."

"Take the guesswork out of what's happening with your credit.  Enroll in your RISK-FREE trial of Triple Advantage and get your Credit Report & Score for $1!"

**"More on Credit Score."**

"DID YOU KNOW that three little numbers (your credit score) could end up saving you hundreds, or even thousands, of dollars?  Lenders use credit scores to help them determine the "credit worthiness" of consumers applying for credit cards, lines of credit, or loans.  The applicant's credit score will probably be used for figuring out whether he or she qualifies for credit, and if so, what terms and interest rates he or she will receive."

"Credit scores are calculated based on data in your credit reports....That's why it's so important to stay on top of your credit reports for changes that could affect your credit scores."

1        "Triple Advantage Credit Monitoring lets you do both ... plus you can pull

2        your credit report and check your credit score every day as a paid

3        member!"

4        **"Try Triple Advantage RISK-FREE for 7 Days and Get Your Credit**

5        **Report & Credit Score for $1!"**

6        17.     Another example of Defendant's advertising, available and disseminated at

7  Defendant's Internet site, www.freecreditscore.com, is attached as Exhibit 3, the contents of

8  which are incorporated herein by reference.  In this advertisement, immediately after the

9  prominently displayed number 598, designed to represent a credit score, Defendant states:  "Only

10  One Number Matters!  Your **CREDIT SCORE.**"  In this advertisement, Defendant further

11  represents:

12        "Try it FREE!  Membership helps you understand your credit and plan for

13        financial decisions."

14        →    **"Credit Score Alerts**

15             Find out when your Score changes.  This could help you

16             qualify for better interest rates and lower monthly payments

17             on new loans."

18        18.     An example of Defendant's advertising, available and disseminated at

19  Defendant's Internet site, www.consumerinfo.com, is attached as Exhibit 4, the contents of which

20  are incorporated herein by reference.  Defendant makes the following representations in this

21  advertisement:

22        "What you do today can impact your credit tomorrow."

23        "Now when you order your Report for only $1 you'll also get your Credit

24        Score for FREE!"

25        "Get your Credit Report & Score safely and securely!"

26        "CLICK HERE TO GET YOUR REPORT AND SCORE"

27        **"Get your Credit Report & Score!"**

28        **"About Credit Scores"**

"A credit score is a three-digit number that lenders and creditors use to determine a consumer's credit worthiness.  A higher credit score could qualify an applicant for lower interest rates and better terms on a loan or credit card, which could translate into a savings of hundreds or thousands of dollars over the life of a loan or the duration of a credit card account."

"Credit scores are calculated based on the data in your credit reports.  They can change over time ... That is why it's important to stay on top of your credit reports for key changes that could affect your credit scores ...."

"So take advantage of this opportunity to get your Credit Report for $1 and your FREE Credit Score when you try Triple Advantage Credit Monitoring FREE for 7 days!"

19.     Yet another illustrative advertisement of Defendant, disseminated and available at Defendant's Internet site, www.freecreditscore.com, is attached as Exhibit 5, the contents of which are incorporated herein by reference.  In this advertisement, right before the prominently displayed number 753, Defendant represents in large print, "A Good Credit Score Is 700 & Above," followed by "See Yours in 2 Easy Steps for $0."  In this advertisement, Defendant further represents:

"Checking your own credit won't affect your Score!"

"IMPORTANT INFORMATION:  When you order your free Credit Score, you will begin your 7-day trial membership in Triple Advantage."

"Try it FREE!  Membership helps you understand your credit and plan for financial decisions."

"→ Credit Score Alerts

Find out when your Score changes.  This could help you qualify for better interest rates and lower monthly payments on new loans."

20.     In Defendant's advertisement attached as Exhibit 5, Defendant's representation, "A Good Credit Score Is 700 & Above", immediately before "753", followed by the invitation to "See Yours" and the representations described in the immediately preceding paragraph, reinforce the overall message that Defendant is offering and selling a credit score that

is actually used by lenders in determining the creditworthiness of consumers.  Through such statements and representations, Defendant purposefully taps into the ordinary meaning of a credit score, reinforced by Defendant's advertising and representations, as a score used by lenders in determining the creditworthiness of consumers and misleads consumers into believing that what Defendant is selling is what it is advertising, when, in truth and in fact, as discussed in paragraphs 22-23 below—and as Defendant itself concedes but hides buried in its "Terms and Conditions" -- its credit scores are based on Experian's in-house model, the Plus Score®, that is not sold to lenders.

21.     Another example of Defendant's advertisements, which was disseminated and available at Defendant's Internet site www.freecreditreport.com, including in July 2008, is attached as Exhibit 6, the contents of which are incorporated herein by reference.  In Defendant's advertisement attached as Exhibit 6, Defendant represents:  "Know your Score™"; "24-hour online access to your credit score & credit report"; "GET YOUR FREE CREDIT SCORE..."; "Get your Free Credit Report and Credit Score from the leading provider of consumer credit monitoring products"; **"Take the first step toward taking control of your credit!** Getting your FREE Credit Report & Credit Score is the first step in knowing your credit."; "Take the guesswork out of what's happening with your credit.  Enroll in your FREE 7-day trial of Triple Advantage and get your FREE credit report & credit score just for trying it!"; **"More on Credit Score.** DID YOU KNOW that three little numbers (your credit score) could end up saving you hundreds, or even thousands, of dollars?  Lenders use credit scores to help them determine the 'credit worthiness' of consumers applying for credit cards, lines of credit, or loans.  The applicant's credit score will probably be used for figuring out whether he or she qualifies for credit, and if so, what terms and interest rates he or she will receive."

22.     Through its advertising, including the illustrative advertisements attached as Exhibits 1-6, Defendant represents, directly or indirectly, that Defendant offers, sells and will provide to consumers credit scores that are used by lenders in making determinations of the consumer's creditworthiness.  In truth and in fact, contrary to Defendant's representations, Defendant does not sell or provide to consumers responding to and ordering from Defendant's

1   Internet sites credit scores that are actually used by lenders in making determinations of the

2   consumer's creditworthiness and Defendant does not disclose that material fact to consumers.

3           23.     Defendant's Internet advertisements contain numerous different links

4   found at different places on its advertisements, one of which is entitled "Terms & Conditions."

5   One of the numerous links found at each of Defendant's above illustrative Internet advertisements

6   is a link to the "Terms And Conditions," a copy of which is attached as Exhibit 7, the contents of

7   which are incorporated herein by reference. Buried in Defendant's "Terms and Conditions," in

8   dense print following multiple paragraphs discussing fourteen other topics, appear the following

9   statements:

10          **"PLUS SCORE®**

11          Products and credit resources on the Product Websites utilize the Plus

12          Score®. The Plus Score®, developed by Experian, and the different risk

13          levels presented by it, are for educational purposes only. The Plus Score is

14          not currently sold to lenders, and is not an endorsement or guarantee of

15          your credit worthiness as seen by lenders.

16          Please be aware that there are many scoring models used in the

17          marketplace. Each scoring model may have its own set of factors and

18          scale. The information and credit scoring model may be different than that

19          used by a lender. The Plus Score may not be identical in every respect to

20          any other credit score produced by another company or used by your

21          lender. The Plus Score is not a so-called FICO score, and may differ for a

22          variety of reasons."

23   The above statements appear nowhere in the body or home page of Defendant's Internet

24   advertisements but only appear buried within  and under the "Terms And Conditions" link

25   Defendant has posted at its Internet sites during the class period (since March 22, 2007).

26          24.     In its advertising, including its Internet sites www.freecreditreport.com,

27   www.freecreditscore.com and www.consumerinfo.com, Defendant fails to clearly and

28   conspicuously disclose the material information contained in the immediately preceding

paragraph, including the material facts that Defendant's credit scores are based on Experian's in-house Plus Score®, that the Plus Score® is not sold to lenders, and that it is not used by lenders to determine the consumer's creditworthiness. These material facts are directly contrary to – indeed are the exact opposite of – the affirmative misrepresentations made in Defendant's advertisements, including the illustrative Internet advertisements attached as Exhibits 1-6.

25.     After the consumers orders and purchases a credit score from Defendant's Internet sites www.freecreditreport.com, www.freecreditscore.com or www.consumerinfo.com, Defendant continues to perpetuate its fraudulent scheme by misrepresenting that it has provided to the consumer a credit score used by lenders in determining  consumers' creditworthiness and by failing to disclose the material facts that Defendant's credit scores are not sold to lenders and are therefore not used by lenders in determining consumers' creditworthiness.

26.     After the consumer orders and purchases Defendant's advertised credit scores at Defendant's Internet sites, Defendant provides to the consumer a credit score and credit report.  In these post-transaction materials provided by Defendant to consumers, which are entitled "freecreditreport.com™ Know your score," Defendant represents the following:

### "Credit Score"

"Your Credit Score is a numerical representation of your credit worthiness that is used by most lenders and credit card issuers."

**"About your PLUS Score**:

Your PLUS Score is formulated using the information in your credit file. Your Plus Score can range between 330 and 830, with a higher score indicating a lower risk.  There are many scoring models used in the marketplace.  The type of score used, and its associated risk levels, may vary from lender to lender.  But regardless of what scoring model is used, they all have one purpose: to summarize your creditworthiness.  Keep in mind that your score is just one factor used in the application process...

**What this means to you:**

Credit scoring can help you understand your overall credit rating and help

1  companies better understand how to serve you.   Overall benefits of credit scoring

2  have included faster credit approvals, reduction in human error and bias,

3  consistency, and better terms and rates for American consumers through reduced

4  costs and losses for lenders."

5  Through such statements, Defendant represents that it has sold to the consumer a credit score

6  used by lenders in determining consumers' creditworthiness.  After the above statements,

7  Defendant makes the following statements in lighter print:

8  "DISCLAMER" [sic]

9  "The PLUS Score™, developed by Experian, is not an endorsement or guarantee of your credit

10  worthiness as seen by lenders.  The different risk levels presented here are for educational use

11  only."

12  27.   The material representations and omissions made by Defendant after

13  consumers order and purchase Defendant's credit scores at Defendant's Internet sites, are false,

14  deceptive and misleading in that post-transaction, Defendant continues to misrepresent that it is

15  selling and providing credit scores actually used by lenders in determining consumers'

16  creditworthiness and continues to fail to disclose clearly and conspicuously material facts,

17  including that Defendant's Plus Score™-based credit scores are not sold to lenders and are not in

18  fact used by lenders in making determinations of the consumer's creditworthiness.  Through such

19  material misrepresentations and omissions, Defendant continues to mislead Plaintiff and members

20  of the Class and deprives Plaintiff and Class members of truthful information needed to protect

21  themselves from Defendant's unlawful conduct, including by cancelling their orders and seeking

22  refunds and other relief from Defendant.

23  **INJURY TO PLAINTIFF AND THE CLASS RESULTING FROM DEFENDANT'S**

24  **MATERIAL MISREPRESENTATIONS AND OMISSIONS**

25  28.   Plaintiff and members of the proposed Class are consumers who have been

26  injured in their money or property by purchasing Defendant's credit scores that were not as

27  represented by Defendant.

28

29.     Plaintiff and members of the proposed Class suffered actual damages in purchasing credit scores from Defendant that were not as represented in Defendant's advertisements.

30.     Defendant's material misrepresentations and omissions set forth in this Complaint were disseminated at Defendant's Internet sites, exposing Plaintiff and all Class members to Defendant's false, deceptive and misleading advertising and unfair, unlawful and fraudulent acts that deceived Plaintiff and are likely to deceive consumers, including Plaintiff and members of the proposed Class.

31.     Plaintiff saw and relied upon Defendant's representations made in Defendant's Internet advertisement disseminated at www.freecreditreport.com, misrepresenting, directly or indirectly, that Defendant offers, sells and will provide to consumers credit scores actually used by lenders in determining the consumer's creditworthiness and failing to disclose the material facts that Defendant's advertised "credit scores" are not sold to lenders and are not used by lenders in determining consumers' creditworthiness.

32.     Plaintiff paid money to Defendant, including payment to Defendant of monthly charges and fees imposed by Defendant after Plaintiff purchased Defendant's advertised "credit score" as a result of Defendant's false, misleading and deceptive advertisement representing, directly or indirectly, that what was being offered and sold by Defendant was the consumer's credit score used by lenders in determining the consumer's creditworthiness.  Plaintiff cancelled his membership in Defendant's credit monitoring program in or about March, 2011.

33.     Plaintiff would not have paid money to Defendant for Defendant's credit score had Defendant disclosed the material information that Defendant does not offer, sell or provide credit scores actually used by lenders in making determinations of the consumer's creditworthiness.  Had Defendant clearly and conspicuously disclosed in its advertisements at Defendant's Internet sites, www.freecreditreport.com, www.freecreditscore.com and www.consumerinfo.com,  the material facts that Defendant's credit scores are not sold or provided to lenders and are not credit scores used by lenders in making determinations of

consumers' creditworthiness, Plaintiff and members of the proposed Class would have been aware of such material facts.

34.   Defendant's material misrepresentations and omissions induced Plaintiff to purchase Defendant's advertised credit scores and resulted in the payment of money by Plaintiff to Defendant that Plaintiff would not have paid had Defendant truthfully advertised the product that Defendant actually provides to consumers.

35.   As a result of Defendant's unlawful conduct, Plaintiff and members of the proposed Class were deprived of the opportunity to make informed purchasing decisions based on truthful information, including, without limitation, not purchasing Defendant's advertised "credit scores" but purchasing an actual credit score used by lenders in determining the consumer's creditworthiness.

36.   As a result of Defendant's unlawful conduct, Plaintiff and members of the proposed Class were deprived of the opportunity of making an informed purchasing decision, and were deprived of the opportunity to refuse to do business with companies, such as Defendant, engaged in fraudulent and deceptive conduct.

37.   As a result of Defendant's unlawful conduct, including Defendant's material misrepresentations and omissions, Plaintiff and members of the proposed Class suffered damages.

38.   Plaintiff paid and Defendant received money and Defendant was unjustly enriched by selling millions of misrepresented credit scores to the public, including Plaintiff and members of the proposed Class, as a result of Defendant's false, misleading and deceptive advertising and its unfair, unlawful and fraudulent acts and practices described in this Complaint.

39.   Defendant's misrepresentations and omissions of material facts and other unlawful conduct as set forth in this Complaint were effected through Defendant's advertising directed to Plaintiff, members of the proposed Class and the public and disseminated throughout the United States, including in and from California.

## DEFENDANT PROFITS FROM ITS DECEPTION

40.     Consumers who place an order for Defendant's advertised credit report and credit score are automatically enrolled in Defendant's "Triple Advantage" credit report monitoring service.  If the consumer fails to cancel the membership within a seven-day trial membership period, the consumer's credit card is charged a monthly fee by Defendant ($19.95 per month according to one version of Exhibit 1, or $14.95 per month according to another version of Exhibit 1 and according to Exhibits 2-6).

41.     Defendant's Internet sites advertising Defendant's credit scores generate substantial revenue and profits for Defendant and its parent company, Experian plc.

42.     In its 2010 Annual Report, available at www.experianplc.com, Experian, plc, the parent corporation of Defendant, states that its total revenue in 2010 was $3.9 billion and provides information on the financial performance of its various business units, including its "Interactive" business unit that includes Defendant's web sites offering Defendant's credit scores, credit reports and credit report monitoring products.  The Experian Annual Report 2010 indicates that Experian's Interactive business unit accounted for 27% of revenue, while growth in several of its other business units decreased during the year.  Experian reported increased growth in its Interactive unit and stated that as to its North America business, "Growth in Interactive offset weakness elsewhere."  Experian reported its 2010 revenue in North America for its Interactive unit grew 8% to $922 million from 2009, while 2010 revenue for each of its other three business units declined (reporting that revenue for Experian's Credit Services unit decreased 6%, revenue for the Decision Analytics unit declined 3% and revenue for the Marketing Services unit declined 8%).  *Id.* at p. 18.

## PREVIOUS FEDERAL TRADE COMMISSION ENFORCEMENT ACTIONS

43.     This is not the first time that the truthfulness of Defendant's advertising has been challenged and that Defendant has been put on notice of its duty to advertise truthfully.

44.     On August 15, 2005, the Federal Trade Commission ("FTC") filed a Complaint and a Stipulated Final Judgment and Order for Permanent Injunction in an action against Consumerinfo.com, Inc., captioned *Federal Trade Commission v. Consumerinfo.com,*

1  *Inc.*, No. CV SACV05-801 AHS (MLGx) and filed in the United States District Court, Central

2  District of California.  In that action, the FTC alleged that Consumerinfo.com, Inc., engaged in

3  unfair and deceptive trade practices by failing to adequately disclose that consumers

4  automatically would be signed up for Defendant's credit report monitoring service and charged

5  $79.95 if they did not cancel within a trial period.  The FTC alleged that Consumerinfo.com, Inc.,

6  drove consumers to its Web sites, www.freecreditreport.com and www.consumerinfo.com,

7  through radio, television, e-mail and Internet advertisements promising free credit reports.  The

8  Stipulated Final Judgment and Order for Permanent Injunction required Consumerinfo.com, Inc.

9  to pay up to $950,000 in refunds to consumers.  The Final Judgment required Consumerinfo.com,

10  Inc. to make clear and conspicuous disclosures in advertising any offer in which a consumer

11  receives a free credit report and is enrolled in a credit monitoring program on a trial basis.

12         45.     On January 8, 2007, the FTC filed a Supplemental Stipulated Judgment

13  and Order for Permanent Injunction and Monetary Relief in the case captioned, *Federal Trade*

14  *Commission v. Consumerinfo.com, Inc.*, No. CV SACV05-801 AHS (MLGx) and filed in the

15  United States District Court, Central District of California.  The FTC alleged that

16  Consumerinfo.com, Inc., after the 2005 Final Order prohibiting deceptive and misleading claims

17  about "free" offers and requiring clear and conspicuous disclosure of the terms and conditions of

18  any "free" offer, disseminated advertisements violating the disclosure requirements.  The

19  settlement required Consumerinfo.com, Inc. to pay $300,000 in ill-gotten gains and enjoined

20  Consumerinfo.com, Inc. from misrepresenting its affiliation with the annual credit report

21  available to consumers under federal law.  The FTC's Supplemental Stipulated Judgment and

22  Order further required Consumerinfo.com, Inc., for a period of six years, to maintain various

23  records, including accounting records, customer files, complaints and refund requests and any

24  responses to such complaints or requests, together with advertisements and marketing materials.

25         **DEFENDANT'S ONGOING UNFAIR AND DECEPTIVE ACTS**

26         46.     Defendant knows or in the exercise of reasonable care should know that it

27  is required to advertise truthfully and to refrain from engaging in false, deceptive or misleading

28  advertising and unfair or deceptive practices.

47.     Defendant knows what it is selling as credit scores and knows that what it is advertising as credit scores is not what it actually provides to consumers, as evidenced by, without limitation, Defendant's advertisements and the statements directly contrary to its advertisements buried in Defendant's "Terms and Conditions", as set forth above in paragraph 23.

48.     Defendant continues to engage in the unlawful practices set forth in this Complaint, including making the false, misleading and deceptive representations and failing to disclose the material facts set forth in this Complaint, in Defendant's advertisements for credit scores disseminated at its web sites, including www.freecreditreport.com, www.freecreditscore.com and www.consumerinfo.com.

49.     Defendant's unlawful practices as described in this Complaint are ongoing and continuing in nature.

50.     Unless enjoined, Defendant's unlawful conduct will continue and Plaintiff and members of the Class will continue to purchase Defendant's credit scores subject to Defendant's unlawful acts and practices set forth in this Complaint.

## PUBLIC INTEREST AND BENEFIT

51.     Plaintiff brings this action on behalf of himself and all similarly situated persons in the proposed Class for the relief requested as to Plaintiff and Class members and to promote the public interests in the provision of truthful, non-deceptive, non-misleading information to the public in order to allow consumers to make informed purchasing decisions, and to protect Plaintiff, Class members and the public from Defendant's unfair, deceptive, unlawful and fraudulent practices.

**V.     CLASS ACTION ALLEGATIONS**

52.     Pursuant to Rule 23(a), (b)(2) and (b)(3), Plaintiff brings this action on behalf of himself and the members of the following proposed Class:

> All persons in the United States who, during the period from March
> 22, 2007 through the present, purchased a credit score from
> Defendant Consumerinfo.com, Inc. at one or more of Defendant's
> Internet sites, including www.freecreditreport.com,
> www.freecreditscore.com or www.consumerinfo.com.

53.     Excluded from the Class are (i) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendant's employees, officers, directors, agents, and representatives and their family members; and (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

54.     Members of the proposed Class are so numerous that the individual joinder of all absent Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and is in the exclusive control of Defendant, it is ascertainable by appropriate discovery. Plaintiff is informed and believes, based upon the nature of the trade and commerce involved, that the proposed Class includes millions of Class members who are geographically diverse so that joinder of all Class members is impracticable.

55.     There are questions of law or fact common to the members of the Class and such common questions predominate over questions affecting individual members. Among the questions of law or fact common to the proposed Class are:

a.     Whether Defendant misrepresented the credit scores advertised at Defendant's Internet sites, including www.freecreditreport.com, www.freecreditscore.com and www.consumerinfo.com, and sold by Defendant to Plaintiff and members of the Class;

b.     Whether Defendant concealed, suppressed and failed to disclose truthful information and material facts concerning the credit scores advertised by Defendant at its Internet sites and sold to Plaintiff and members of the Class;

c.     Whether Defendant's representations and omissions concerning its advertised credit scores offered and sold by Defendant involved representations and omissions of material facts;

d.     Whether Defendant's conduct as set forth in this Complaint violates the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; California's False Advertising Law, Bus. & Prof. Code § 17500 *et seq.*; and California's Unfair Competition Law, Ca. Bus. & Prof. Code § 17200 *et seq.*;

91709

CLASS ACTION COMPLAINT

e.     Whether Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to the proposed Class;

f.     Whether Plaintiff and members of the proposed Class have been injured by Defendant's conduct;

g.     Whether Plaintiff and members of the proposed Class are entitled to restitution under California law;

h.     Whether Plaintiff and members of the proposed Class are entitled to recover costs and expenses incurred in prosecuting this action and reasonable attorneys' fees.

56.     Plaintiff's claims are typical of the claims of the Class. Plaintiff and members of the proposed Class all purchased credit scores advertised by Defendant at one of its Internet sites, www.freecreditreport.com, www.freecreditscore.com and www.consumerinfo.com, and have all suffered harm, including the loss of money, as a result of Defendant's common false, deceptive and misleading advertising and unfair, unlawful and fraudulent conduct, including Defendant's misrepresentations and omissions and other unlawful conduct set forth in this Complaint.  By advancing his claims, Plaintiff will also advance the claims of all Class members, because Defendant's unlawful conduct caused all Class members to suffer similar harm.

57.     Plaintiff will fairly and adequately protect the interests of the proposed Class.  Plaintiff has no interest adverse to the interests of the members of the proposed Class. Plaintiff has retained competent counsel who have extensive expertise in prosecuting consumer fraud and Class action litigation and will rigorously assert and pursue Plaintiff's claims and those of absent Class members.

58.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

59.     Defendant has acted or refused to act on grounds generally applicable to the Class.  Declaratory and injunctive relief with respect to the Class is appropriate.

60.     The questions of law or fact common to members of the proposed Class predominate over any individual questions affecting only individual Class members.  Each of the members of the proposed Class purchased a credit score that was not as represented due to Defendant's misrepresentations and concealment, suppression and failure to disclose material facts and unlawful conduct as set forth in this Complaint.  The issues of fact and law applicable to the Class are identical to the issues of fact and law applicable to each individual member of the proposed Class.

61.     A Class action is an appropriate method for the fair and efficient adjudication of this controversy and Class action treatment is superior to the alternatives.  There is no special interest in the members of the Class individually controlling the prosecution of separate actions.  The loss of money and other harm sustained by individual Class members will not be large enough to justify individual actions, especially in proportion to the significant costs and expenses necessary to prosecute this action.  The expense and burden of individual litigation makes it impossible for members of the Class individually to address the wrongs done to them.  Class treatment will permit the adjudication of claims of Class members who could not afford individually to litigate their claims against Defendant.  Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this Class action that would preclude its maintenance as a Class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Furthermore, Defendant transacts substantial business in and perpetuated its unlawful conduct from California.  Defendant will not be prejudiced or inconvenienced by the maintenance of this Class action in this forum.

## VI.     VIOLATIONS ALLEGED

### COUNT 1

### Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et. seq.*

62.     Plaintiff realleges and incorporates all prior paragraphs of this Complaint.

63.     The California Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), (7) and (9), provides, in part, as follows:

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> . . .
>
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have . . .;
>
> . . .
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> . . .
>
> (9) Advertising goods or services with intent not to sell them as advertised.

64.     Defendant's business practices, in advertising, offering to sell and selling its credit scores, by misrepresenting, directly or indirectly, that Defendant's credit scores are used by lenders in determining the consumer's creditworthiness, when, in fact, Defendant does not sell its advertised credit scores to lenders and lenders do not, in fact, use Defendant's credit scores in determining the creditworthiness of consumers, constitute multiple, separate violations of Cal. Civ. Code § 1770(a)(5), (7) and (9), including:

        a.     falsely representing that Defendant's credit scores have characteristics, uses, or benefits which they do not have;

        b.     falsely representing that Defendant's credit scores are of a particular standard, quality or grade, when, in fact, they are not; and

        c.     advertising goods and services with intent not to sell them as advertised.

65.     Defendant's business practices, in advertising, offering to sell and selling its credit scores, of failing to disclose, concealing, suppressing or omitting material information concerning its credit scores, including the material facts that Defendant's advertised credit scores

are not sold to lenders and that lenders do not use Defendant's credit scores in determining the creditworthiness of consumers, constitute multiple, separate violations of Cal. Civ. Code § 1770(a)(5), (7) and (9).

66.    Plaintiff and members of the Class are consumers, as defined by Cal. Civ. Code § 1761(d), in that they purchased credit scores from Defendant for personal, family or household purposes.

67.    Defendant engaged in the unfair or deceptive acts or practices set forth in this Complaint in transactions intended to result, and which did result, in the sale of goods or services to consumers, including Plaintiff and members of the Class.

68.    In advertising and selling Defendant's credit scores, Defendant made the material misrepresentations and omissions set forth in this Complaint in Defendant's advertising, including its Internet sites, www.freecreditreport.com, www.freecreditscore.com and www.consumerinfo.com, disseminated nationwide and in and from California, by or on behalf of Defendant.

69.    Defendant's misrepresentations and omissions set forth in this Complaint are material in that they relate to matters that affect the decisions or conduct of consumers, including Plaintiff and members of the Class, in determining whether to purchase Defendant's credit scores.

70.    Plaintiff and Class members purchased Defendant's credit scores and paid money to Defendant as a result of Defendant's material misrepresentations and omissions and unlawful conduct as described in this Complaint.

71.    Plaintiff and members of the Class have been injured in their money or property by Defendant's unfair or deceptive acts or practices and unlawful conduct set forth in this Complaint.

72.    As a result of Defendant's violations of Cal. Civ. Code § 1770, Plaintiff and members of the Class are entitled to injunctive relief, restitution, costs and reasonable attorneys' fees and any other relief the court deems proper, pursuant to California law, including Cal. Civ. Code § 1780(a)(2),(3) and (5) and § 1782(d).

73.     Pursuant to Cal. Civ. Code § 1782(d), Plaintiff asserts a claim for injunctive relief in this Complaint and will, not less than thirty (30) days after the commencement of this action for injunctive relief, and after providing Defendant with the notice required by Cal. Civ. Code § 1782(a), amend this Complaint to include a request for damages.

## COUNT 2

### False Advertising in Violation of California Business & Professions Code § 17500

74.     Plaintiff realleges and incorporates all prior paragraphs of this Complaint.

75.     Cal. Bus. & Prof. Code § 17500, provides, in part, as follows:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. . . .

76.     Defendant's advertisements for its credit scores contain untrue and misleading statements, including Defendant's representations, directly or indirectly, that Defendant offers, sells and will provide to consumers a credit score that is used by lenders to determine the consumer's credit worthiness.

77.     In Defendant's advertisements, including its advertisements disseminated at Defendant's Internet sites, www.freecreditreport.com, www.freecreditscore.com and www.consumerinfo.com, Defendant fails to clearly and conspicuously disclose material facts, including the facts that Defendant's credit scores are not sold to lenders and that lenders do not use Defendant's advertised credit scores in determining a consumer's creditworthiness.

78.     Defendants know, or in the exercise of reasonable care, should know that the statements, representations and omissions set forth in this Complaint are false, deceptive and/or misleading.

79.     Defendant's conduct of misrepresenting and failing to clearly and conspicuously disclose material facts concerning Defendant's credit scores as set forth in this Complaint constitute multiple, separate violations of Bus. & Prof. Code § 17500.

80.     In advertising its credit scores, Defendant made the material misrepresentations and omissions set forth in this Complaint in Defendant's advertising, including at Defendant's Internet sites, www.freecreditreport.com, www.freecreditscore.com and www.consumerinfo.com, disseminated nationwide and in and from California, by or on behalf of Defendant.

81.     Defendant's misrepresentations and omissions set forth in this Complaint are material in that they relate to matters that affect the decisions or conduct of consumers, including Plaintiff and members of the Class, in determining whether to purchase Defendant's advertised credit scores.

82.     Plaintiff and Class members purchased Defendant's credit scores and paid money to Defendant as a result of Defendant's material misrepresentations and omissions and unlawful conduct described in this Complaint.

83.     Plaintiff and members of the Class have been injured in their money or property as a result of Defendant's false or misleading advertising practices and unlawful conduct as set forth in this Complaint.

84.     As a result of Defendant's false or misleading advertising, Plaintiff and members of the Class are entitled to injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct and costs and attorneys' fees.

## COUNT 3

### Violations of the California Business & Professions Code § 17200, *et seq.*

85.     Plaintiff realleges and incorporates all prior paragraphs of this Complaint.

86.     California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, defines unfair competition to include:

> any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.

87.     Defendant's business practices, in advertising its credit scores, of misrepresenting, directly and indirectly, that Defendant's credit scores are used by lenders in determining the consumer's creditworthiness when, in fact, Defendant does not sell its advertised credit scores to lenders and lenders do not use Defendant's advertised credit scores in determining a consumer's creditworthiness, are:

a.     unlawful, as prescribed by Cal. Bus. & Prof. Code § 17200, in that Defendant's advertisements contain untrue or misleading statements of material fact which were and are known by Defendant, or which by the exercise of reasonable care should be known, to be untrue or misleading and, thus, constitute multiple, separate violations of Cal. Bus. & Prof. Code §§ 17200 and 17500;

b.     fraudulent business practices and, thus, constitute multiple, separate violations of Cal. Bus. & Prof. Code §17200 in that members of the public are likely to be deceived by Defendant's acts or practices into believing a material fact, i.e., that Defendant's advertised credit scores are actual credit scores used by lenders to determine a consumer's creditworthiness when, in fact, they are not; and

c.     unfair business practices and, thus, constitute multiple, separate violations of Cal. Bus. & Prof. Code § 17200, because they offend the public policy of California, and are unethical, oppressive, unscrupulous or substantially injurious to consumers or, alternatively, the harm caused by Defendant outweighs any benefits accruing from such actions.

88.     In advertising and selling Defendant's credit scores, Defendant made the material misrepresentations and omissions set forth in this Complaint in Defendant's advertising, including at Defendant's Internet sites, www.freecreditreport.com, www.freecreditscore.com and

1  www.consumerinfo.com, disseminated nationwide and in and from California, by and/or on

2  behalf of Defendant.

3         89.    Defendant's misrepresentations and omissions set forth in this Complaint

4  are material in that they relate to matters that affect the decisions or conduct of consumers,

5  including Plaintiff and members of the Class, in determining whether to purchase Defendant's

6  advertised credit scores.

7         90.    Plaintiff and Class members purchased Defendant's credit score and paid

8  money to Defendant as a result of Defendant's material misrepresentations and omissions and

9  Defendant's unlawful, unfair and fraudulent conduct as described in this Complaint.

10        91.    Plaintiff and members of the Class have been injured in their money or

11  property as a result of Defendant's unlawful, unfair, and fraudulent business acts or practices and

12  untrue or misleading advertising, as set forth in this Complaint.

13        92.    As a result of Defendant's violations of Cal. Bus. & Prof. Code § 17200, *et*

14  *seq.*, Plaintiff and members of the Class are entitled to injunctive relief to prevent the use or

15  employment by Defendant of the acts or practices constituting unfair competition as set forth in

16  this Complaint and as necessary to restore to Plaintiff and members of the Proposed Class money

17  or property acquired by means of Defendant's unlawful conduct.

18  **VII.   REQUEST FOR RELIEF**

19        WHEREFORE, Plaintiff respectfully requests that the Court award judgment for

20  Plaintiff and members of the Class against Defendant as follows:

21        A.    Entering an order certifying this action as a Class action, properly brought

22  by Plaintiff on behalf of the Class, as defined in this Complaint; certifying Plaintiff as a

23  representative of the Class; and appointing Plaintiff's counsel as counsel for the Class;

24        B.    Declaring that Defendant's acts and practices as set forth in this Complaint

25  constitute multiple, separate violations of the above California statutory consumer laws;

26        C.    Enjoining Defendant from engaging in the unlawful acts and practices set

27  forth in this Complaint and from further violations of California statutory consumer laws;

28        D.    Enjoining Defendant from misrepresenting and failing to clearly and

1  conspicuously disclose material facts to consumers concerning Defendant's advertised credit

2  scores;

3          E.     Ordering Defendant to disgorge to Plaintiff and the members of the Class

4  all monies unjustly received through Defendant's unlawful conduct;

5          F.     Awarding restitution to Plaintiff and members of the Class as provided by

6  law;

7          G.     Awarding Plaintiff and members of the Class any available pre-judgment

8  and post-judgment interest as provided by law;

9          H.     Awarding Plaintiff and the Class costs and reasonable attorneys' fees as

10  provided by law; and

11          I.     Granting Plaintiff and the Class such other and further relief as the Court

12  finds just and proper.

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues so triable.

Dated: March 22, 2011                    Respectfully submitted,

By: _____
Jason S. Hartley (State Bar No. 192514)
hartley@stuevesiegel.com
STUEVE SIEGEL HANSON, LLP
550 West C Street, Suite 610
San Diego, CA 92101
Telephone:  (619) 400-5822

Vincent J. Esades
vesades@heinsmills.com
David Woodward (State Bar No. 68073)
dwoodward@heinsmills.com
Renae D. Steiner
rstenier@heinsmills.com
HEINS MILLS & OLSON, P.L.C.
310 Clifton Avenue
Minneapolis, MN  55403
Telephone:  (612) 338-4605

*Attorneys for Individual and Representative Plaintiff
David Waring*